# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Apple Inc., One Apple Park Way, Cupertino, California;
Information associated with iCloud account
Aaron_brozek1975@icloud.com

Case No. 26mj5600

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) and<br>21 U.S.C. § 841(a)(1) | Felon in possession of a firearm and ammunition, and<br>Possession of controlled substances with intent to distribute; |

The application is based on these facts:

See attached Affidavit of Veronika Fischer, Special Agent, FBI, which is hereby incorporated by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Veronika Fischer
*Applicant's signature*

Veronika Fischer, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 09/18/2026

*Judge's signature*

City and state: San Diego, California

Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Veronika Fischer, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with an iCloud accounts connected to the following Apple ID:

aaron_brozek1975@icloud.com
("**Subject Account**")

for items which constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. §922(g)(1) (felon in possession of a firearm and ammunition) and 21 U.S.C. §841(a)(1) (possession of controlled substances with intent to distribute, and collectively, the "target offenses"); as more fully described in Attachment B.

2. For the reasons set forth below, I believe there is probable cause for the requested warrants for the **Subject Account**, the contents for which are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Apple Park Way, Cupertino, California 95014. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B, which are attached hereto incorporated herein.

## EXPERIENCE AND TRAINING

3. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. §2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. §2516.

4. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since October of 2022. I am currently assigned to the East County Regional Gang Task Force in El Cajon, California. My duties include the investigation and apprehension of individuals involved in violent gang-related activities as well as drug

trafficking and distribution. Prior to joining the FBI, I worked as a Forensic Scientist in Biology/DNA for the Texas Department of Public Safety Crime Laboratory in Austin, Texas.

5. Prior to being assigned to the FBI San Diego Field Office, I completed the Basic Field Training Course at the FBI Academy in Quantico, Virginia. During New Agent training, which spanned eighteen (18) weeks, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects.

6. As a Special Agent, I have participated in over 5 firearm-related investigations of alleged criminal violations of the Gun Control Act and National Firearms Act. I have received substantive advanced training pertaining to the investigation of various crimes, which arise from firearms possession and trafficking. I have participated in undercover investigations involving the purchase of narcotics and/or firearms, executed search warrants for narcotics and firearms evidence, and have conducted numerous surveillances in connection with firearm and narcotics trafficking investigations.

7. In connection with narcotics and firearms trafficking crimes that I have worked on as well as information related to me by other individual(s), including conversations with other law enforcement officers, I am familiar with the methods used by individuals who commit such crimes. These types of crimes are typically planned in advance with individuals committing these types of crimes commonly communicating and coordinating with others prior to, during, and after each event using cellular/wireless telephones.

8. The following is based on my own investigation, reports written by other law enforcement agents, consultation with other law enforcement agents and officers experienced in investigating violent crimes, my review of documents and computer records

related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrant. Dates and times are approximate.

**Background Information on Apple, Inc.**[1]

9. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

10. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Manage and use your Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "Introduction to iCloud," available at https://support.apple.com/kb/PH26502; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; and "Apple Platform Security," available at https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App

> Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

11. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

12. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

13. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

14. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

15. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network

information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Some of this data is stored on Apple's servers in an encrypted form but may nonetheless be decrypted by Apple. Records and data associated with third-party apps, including the instant messaging service WhatsApp, may also be stored on iCloud.

16. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

17. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity.

18. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such

information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

19. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

## FACTS SUPPORTING PROBABLE CAUSE

### Background of the Case

23. On January 29, 2026, at approximately 12:09 p.m., San Diego Sheriff's Office (SDSO) deputies were dispatched to a report of domestic violence at 7775 North Avenue #109, Lemon Grove, California. Deputies were notified that the reporting party, a female with the initials A.B., alleged that her husband Aaron BROZEK had physically battered her the night before and had just slapped the phone from her hand.

24. As SDSO deputies were arriving at 7775 North Avenue, A.B. observed BROZEK drive by her in a 2006 Dodge Magnum. A.B. informed responding officers that BROZEK was possibly driving to the residence of the Dodge Magnum's registered owner—a residence near 8711 Navajo Road, San Diego, California.

25. A.B. also told deputies that the night before, she and BROZEK engaged in a verbal argument as he was removing items from the apartment and that he told her, "[i]f I'm going to hit you again, I'm going to kill you, so don't worry about it." He then stole money from her wallet and, as he was leaving, pushed her with enough force to cause her to hit her head on the door frame.

26. A.B. stated that she spoke with BROZEK on the phone after he left. She said she told him that she was going to the hospital for the injuries she had suffered. He responded that if she did, law enforcement officers would come to get him and that he was going to "die" because he was not going back to prison. She informed deputies that

BROZEK kept a gun in his waistband and had rifles in his vehicle. A.B. described the guns to deputies as a black handgun, a black rifle, and a brown rifle.

27. A.B. told deputies that BROZEK returned that night and began throwing items in the apartment. He then got close to A.B.'s face and told her he was going to hit her. When A.B. attempted to use her phone to call the police, BROZEK hit the phone out of A.B.'s hands and then left.

28. SDSO deputies searched for BROZEK and later identified him as the driver and sole occupant of the Dodge Magnum in the vicinity of 8711 Navajo Road. Once additional officers responded to the scene, they conducted a high-risk vehicle stop based on the belief that BROZEK was wanted for domestic violence and was potentially armed and suicidal. During the subsequent stop, BROZEK was uncooperative and refused to follow the deputies' commands. After he was physical with deputies, they deployed a trained SDSO canine to subdue him. BROZEK was ultimately detained and placed under arrest.

29. The Dodge Magnum was searched incident to BROZEK's arrest. Inside the vehicle, deputies found approximately 82.8 grams of a crystalline substance consistent with the appearance of methamphetamine, two bulbous glass pipes, one small pocket scale, approximately 100 rounds of various calibers, firearm magazines, a 9mm Glock 19 bearing serial number EH331, loaded with a full 15-round magazine, a Winchester Model 1200 shotgun bearing serial number L3139180, loaded with 4 12-gauge rounds, an unloaded New England SB1 shotgun bearing serial number NE215119, brass knuckles, and a black iPhone. Deputies also found jewelry, US and foreign currency, and watches.

30. The registered owner of the Dodge Magnum informed SDSO deputies that none of the items located in the Dodge Magnum belonged to them as they had cleaned out the vehicle for BROZEK's use earlier on the day of the incident.

31. The firearms were seized and inspected. An initial investigation of the firearms revealed that they were manufactured outside of California and therefore traveled in interstate commerce.

32. 15. BROZEK was arrested on state charges including violations of California Penal Code 148(A) – Resisting Arrest, 273.5 – Spousal Abuse with Minor Injury, and 591.5—Obstruct Use of Any Wireless Communication Device as well as California Health and Safety Codes 11370.1(a)—Possession of a Controlled Substance while Armed with a Loaded Firearm, 11378—Possession of a Controlled Substance for Sale, and 11364(A)—Possession of Controlled Substance Paraphernalia, as well as California Penal Code 21810—Possession of Metal Knuckles, 29800(A)(1)—Felon in Possession of a Firearm, 25850 (C)(6)—Carrying a Loaded Handgun: Not Registered Owner, 30305(A)(1)—Prohibited Person in Possession of Ammunition, and 25400(A)(1)—Carrying a Concealed Weapon in a Vehicle.

33. BROZEK was transported to Sharp Memorial Hospital. BROZEK's Apple iPhone 16 with a red phone case was seized by the San Diego Sherriff's Office pursuant to BROZEK's arrest as the device was located on his person and was subsequently transferred to the custody of the Federal Bureau of Investigation. A Thermo Fisher Scientific TruNarc Handheld Narcotics Analyzer device to test the seized narcotic evidence. The TruNarc Analyzer indicated that the substance in the baggies seized from the vehicle BROZEK was driving tested presumptively positive for methamphetamine.

34. The crystalline substance seized during BROZEK's arrest was submitted for chemical analysis, which revealed the substance to be a total of approximately 73.57 grams of pure methamphetamine. The substance was divided among three bags, including one bag containing approximately 60 grams, one bag containing approximately 7.22 grams, and one bag containing approximately 6.35 grams.

35. Based on my training and experience, the amount of methamphetamine located in the vehicle BROZEK was driving is consistent with that of a distributable quantity and not typically reserved solely for one's personal use. I am aware from my training, experience, and conversations with other investigators that 0.05 to 0.10 grams of methamphetamine is considered a dosage depending on the unique tolerance of the user and the purity of the methamphetamine. Thus, the 73.57 grams of pure methamphetamine

located in BROZEK's possession would be the equivalent of anywhere between roughly 735 and 1,470 doses depending on the aforementioned factors. Additionally, BROZEK' s possession of the methamphetamine in one larger and two smaller quantities along with a digital scale is further indicia of drug distribution as digital scales are used to determine drug weights when distributing portions of drugs from a larger quantity possessed by the dealer. I believe that the quantity of the methamphetamine together with the surrounding indicia of distribution, including the scale and separately packaged methamphetamine, provides probable cause that the methamphetamine was knowingly possessed by BROZEK with intent to distribute some or all of it.

36. On March 27, 2026, the Honorable Daniel E. Butcher, U.S. Magistrate Judge, authorized a search warrant pertaining to the Apple iPhone seized from BROZEK pursuant to his arrest by SDSO on January 29, 2026.

37. Agents reviewed the download of the phone. The contents of the forensic download, however, were limited in scope due to security features on the phone and available software. The download, for example, was unable to capture phone call logs and any messages.

38. One of the photographs included in the phone download was of a receipt from a Sportsman's Warehouse in Yuma, Arizona that was taken on January 20, 2026. The receipt listed five separate purchased items, all of which were various types of ammunition, with a final purchase price of $394.57.



SPORTSMAN'S WHSE YUMA
1038 S. CASTLE DOME AVE.
YUMA, AZ 85365
928-615-3200

Customer Name: JERRY DOWNS
Customer Id: 0266-6480083

1315963 RUG BX-25(2) 25RD M 57.99 T
1319750 CCI BLAZER 9MM 115 12.99 T
1232723 WIN 22LR 36GR HP 33 19.99 T
1319750 CCI BLAZER 9MM 115 12.99 T
1864942 WIN 5.56MM 193 55 F 259.99 T

SUBTOTAL 363.95
Sales Tax @ 8.412% 30.62
TOTAL 394.57

VISA 250.00
DBT 144.57

XXXXXXXXXXXX2933 SWIPED
APPR: 009968

XXXXXXXXXXXX2698 CHIP
APPR: 046638
Application Label: US DEBIT

*Photograph of receipt taken on January 20, 2026 (seized from BROZEK's phone download)*

23. The second photograph seized from the phone download was of a firearm of an indeterminate make and model that was taken on January 6, 2026. Based on my training and experience as well as consultation with other law enforcement officers, it has not been determined whether the item depicted is a "firearm" as defined under federal law.



*Photograph of unknown firearm taken on January 6, 2026 (seized from BROZEK's phone download)*

39. Furthermore, BROZEK's cellular phone download revealed that the Apple ID stored under "Device Information" was aaron_brozek1975@icloud.com. No other Apple IDs were located on BROZEK's cellular phone download.

40. Based on the investigation thus far, investigators believe the email account "aaron_brozek1975@icloud.com" (**Subject Account**) is affiliated with BROZEK and his iCloud account. Furthermore, based on the investigation thus far, Agents believe that the exclusive user of the **Subject Account** is Aaron BROZEK.

41. Given that the phone download suggests that the **Subject Account** has a "present" iCloud account, it is likely that the subscriber or user of the **Subject Account** utilizes the iCloud file hosting service to backup data from his Apple cellphone. As described in the paragraphs below, the iCloud service can be used to backup and store data from iOS devices, third-party applications, photos, videos, documents, and other electronic data.

42. From my review of the content of BROZEK's phone, I believe BROZEK used Apple's cloud-based services to upload and store evidence of his firearm and ammunition possession. Additionally, I am aware from my training and experience that drug distribution often involves continuing communication that transpires over the days, weeks, and months prior to a distribution event. Investigators believe that the requested iCloud data will reveal if BROZEK engaged in conversations about narcotics and/or firearms trafficking activity on or around January 29, 2026. The iCloud data may also reveal through photos or videos if BROZEK was in possession of illegal narcotics and/or firearms on or around January 29, 2026. Further, iCloud data may reveal any pertinent search histories. Subscriber and/or user information, including: all electronic mail, files, cloud storage, location information, search history, images, text messages, voicemail, histories, buddy or friend lists, contacts, iCloud Drives, iCloud files, iCloud Backup and Restore, photos, notes, videos, calendars, messages profiles, methods of payment, detailed billing records, access logs, and transactional data will lead to the identification of co-conspirators and other evidence of drug importation and distribution. Such information is likely to be stored in the **Subject Account**. I further believe that evidence of drug trafficking (such as text messages, photos, videos, locations, and contacts) may be stored in the **Subject Account**. In my training and experience, narcotics traffickers may be involved in the planning and coordination of drug distribution events in the days and weeks prior to such an event, including acquiring drugs from a source of supply and then communicating with customers involved in purchasing drugs for personal use or further distribution.

43. I also know, based on my training and experience, that iCloud accounts can be used to backup data from multiple devices over a long period of time. For example, one iCloud account can be used to store and backup data from prior phones that are no longer in use, as well as current phones that are in use. In this manner, an iCloud account is likely to contain evidence regardless of whether a particular phone or device has been in use for a more limited period.

44. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

45. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

46. Finally, given the facts of this affidavit, my understanding of how Apple accounts can be used in furtherance of the offenses as described herein, and my awareness that Apple accounts can retain information for extended periods of time, I submit that this Court should authorize a search of the **Subject Accounts** for the period of December 29, 2025, up to and including January 29, 2026.

**INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED**

47. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, Investigators or other federal agents and personnel will need to process the data into a format that may be reviewed. Investigators will then need to review the data to locate the items described in Section II of Attachment B. This process takes time. The personnel conducting the examinations into responsive data will complete the analysis within 120 days of the date the data is received from Apple, absent further application to this court.

## CONCLUSION

48. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Subject Account** contains evidence of violations of the target offenses and will contain electronic evidence of those violations, as more fully described in Attachment B.

49. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to seize and search the items described in Attachments A and the seizure of items listed in the corresponding Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Veronika Fischer

Veronika Fischer
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone September 18, 2026.

Honorable Michael S. Berg
United States Magistrate Judge

# **Attachment A**

PROPERTY TO BE SEARCHED

This warrant applies to information associated with iCloud Account Aaron_brozek1975@icloud.com, which is stored at premises owned, maintained, controlled, or operated by Apple, Inc. ("Apple"), a company headquartered at One Apple Park Way, Cupertino, California.

# ATTACHMENT B

ITEMS TO BE SEIZED

**I. Service of the Warrant**

The officer executing the warrant shall permit Apple Inc., as the custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II. Information to be disclosed by Apple, Inc. ("Apple")**

To the extent that the information described in  is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules

("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and

iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All telephone and FaceTime call logs, SMS & iMessages, third party application data, keybag and FileInfoList.txt files, and iCloud device backup data;

g. All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps to include date and time stamps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**III. Information to be Seized by the Government**

All information described above in Section II that constitutes evidence of violations of 18 U.S.C. §922(g)(1) and 21 U.S.C. §841(a)(1) (the "target offenses"); limited to the period of December 29, 2025, up to and including January 29, 2026, and to the seizure of evidence:

a) tending to indicate communications, photographs, videos, or other data depicting firearms or ammunition;

b) tending to indicate communications, photographs, videos, or other data depicting methamphetamine or other controlled substances, paraphernalia (such as pipes, scales, packaging and/or packing materials) along with any proceeds attained from the distribution of controlled substances;

c) tending to identify communications, photographs, videos, or other data shared with and between co-conspirators coordinating and then executing controlled substances transactions;

d) tending to identify communications, photographs, videos, or other data shared with and between co-conspirators, their source(s) of supply, and/or customers made about or in specifics of controlled substances;

e) tending to identify internet and web-search history relating to controlled substances distribution;

f) tending to identify communications, photographs, videos, or other data regarding proceeds from controlled substances transactions or otherwise attempting to hide or give away what appears to be proceeds from controlled substances;

g) tending to identify geolocational information relevant to stash houses and/or controlled substances;

h) tending to identify communications, photographs, videos, or other data made about covering up or hiding crimes and escaping or hiding from law enforcement; and/or,

i) tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

All of the above constituting evidence of a violation of the target offenses.